1   Francis O. Scarpulla (41059)
    Craig C. Corbitt (83251)
2   Christopher T. Micheletti (136446)
    Judith A. Zahid (215418)
3   Patrick B. Clayton (240191)
    Qianwei Fu (242669)
4   ZELLE HOFMANN VOELBEL & MASON LLP
    44 Montgomery Street, Suite 3400
5   San Francisco, CA 94104
    Telephone:    (415) 693-0700
6   Facsimile:    (415) 693-0770
    *fscarpulla@zelle.com*

7

8   *Attorneys for Plaintiffs and the Proposed Classes*

9   [Additional Counsel Listed on Signature Page]

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                     **SAN FRANCISCO DIVISION**

14   CYNTHIA R. RALL and RICHARD R. RALL
     Individually and on behalf of            Case No.
15   all others similarly situated,

16          Plaintiffs,                        **CLASS ACTION COMPLAINT**

17          *vs.*                              **JURY TRIAL DEMANDED**

18   SONY CORPORATION, SONY OPTIARC
     AMERICA INC., SONY OPTIARC INC.,
19   HITACHI, LTD., TEAC CORPORATION,
     TEAC AMERICA, INC., LG ELECTRONICS,
20   INC., HITACHI-LG DATA STORAGE INC.,
     TOSHIBA SAMSUNG STORAGE
21   TECHNOLOGYCORP., SAMSUNG
     ELECTRONICS CO. LTD., TOSHIBA
22   CORPORATION, KONINKLIJKE PHILIPS
     ELECTRONICS N.V., LITE-ON IT
23   CORPORATION, PHILIPS AND LITE-ON
     DIGITAL SOLUTIONS CORPORATION,
24   PHILIPS AND LITE-ON DIGITAL
     SOLUTIONS USA, INC.,

25          Defendants.

26

27

28

                              1

1  Plaintiffs, indirect purchasers of Optical Disk Drives as defined below, on behalf of

2  themselves and all others similarly situated, for their Complaint against all Defendants named

3  herein, demand trial by jury of all claims properly triable thereby, and complain and allege as

4  follows:

## I.  INTRODUCTION

6  1.  This case arises out of a long-running conspiracy extending from at least October 1,

7  2005 through the present ("the Class Period"), among Defendants and their co-conspirators, with

8  the purpose and effect of fixing, raising, and maintaining prices for Optical Disk Drives sold

9  indirectly to Plaintiffs and other indirect purchasers throughout the United States.

10  2.  The Optical Disk Drives and Optical Disk Drive Products that are the subject of this

11  lawsuit include the following formats: CD-ROMs ("CD"), CD recordable/rewritable ("CD-

12  R/RW"), DVD-ROM ("DVD"), DVD-recordable/rewritable ("DVD-R/RW")), Blu-Ray ("BD"),

13  Blu-Ray recordable/rewritable ("BD-R"/"BD-RE") and HD-DVD.  During the Class Period,

14  Optical Disk Drives served as one of the primary means for recording and reading music, movies,

15  and other digital data.  During this time, defendants' sales of Optical Disk Drives and Optical Disk

16  Drive Products increased substantially and generated billions of dollars in annual revenues.

17  3.  To maintain price stability and increase profitability in the Optical Disk Drive

18  market, Defendants conspired, combined, and contracted to fix, raise, maintain, and stabilize the

19  price at which Optical Disk Drives and Optical Disk Drive Products were sold in the United States.

20  Defendants fraudulently concealed their anticompetitive conduct from Plaintiffs and the Classes in

21  furtherance of the conspiracy.

22  4.  Defendants' anticompetitive conduct in the Optical Disk Drive market is the subject

23  of an ongoing grand jury investigation by the United States Department of Justice ("DOJ").

24  Regulators in other countries are investigating Defendants' practices as well.

25  5.  As a result of Defendants' unlawful conduct, Plaintiffs and the other members of

26  the Class paid artificially inflated prices for Optical Disk Drives and Optical Disk Drive Products

27  during the Class Period in excess of the prices they would have paid in a competitive market.

28  6.  Plaintiffs bring this action seeking federal injunctive relief under Section 16 of the

1  Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to
2  recover damages under sections 349 *et seq*. of New York's General Business Law and the
3  Donnelly Act, common law principles of restitution, disgorgement, unjust enrichment, as well as to
4  recover the costs of suit, including reasonable attorneys fees, for the injuries that Plaintiffs and all
5  others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain
6  and stabilize the price of Optical Disk Drives.

7  ## II.    JURISDICTION AND VENUE

8  7.    This action is brought under Section 16 of the Clayton Act (15 U.S.C. §26) to
9  secure equitable relief against Defendants due to their violations of Section 1 of the Sherman
10  Antitrust Act (15 U.S.C. §1), as well as under the antitrust and unfair competition laws of the State
11  of New York to obtain restitution, recover damages, and to secure other relief against Defendants
12  for violations of those laws.

13  8.    This Court has subject matter jurisdiction of the federal antitrust claims asserted in
14  this action under Section 16 of the Clayton Antitrust Act (15 U.S.C. §26), Section 1 of the
15  Sherman Act (15 U.S.C. §1), and 28 U.S.C. §§ 1331 and 1337. This Court has subject matter
16  jurisdiction of the state-law claims asserted in this action under 28 U.S.C. §§ 1332(d) and 1367, in
17  that the matter in controversy exceeds the sum of $5 million exclusive of interest and costs,
18  members of the proposed classes are citizens of states different from Defendants, and certain
19  Defendants are citizens or subjects of foreign states.

20  9.    Venue is proper in this District pursuant to 15 U.S.C. §22 and 28 U.S.C. §1391,
21  because one or more Defendants reside, is licensed to do business, or is found or transacts business
22  in this District, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims
23  arose in this District.

24  10.    Defendants conduct business throughout the United States, including in this
25  jurisdiction, and they have purposefully availed themselves of the laws of the United States,
26  including the laws of the State of New York. Defendants' products are sold in the flow of
27  interstate commerce, and Defendants' activities had a direct, substantial and reasonably foreseeable
28  effect on such commerce.

3

1    11.    Defendants' conspiracy to fix the price of Optical Disk Drives substantially affected

2  commerce throughout the United States and in the State of New York because Defendants, directly

3  or through their agents, engaged in activities affecting the State of New York. Defendants have

4  purposefully availed themselves of the laws of State of New York identified herein in connection

5  with their activities relating to the production, marketing, and sale of Optical Disk Drives.

6  Defendants produced, promoted, sold, marketed, and/or distributed Optical Disk Drives, thereby

7  purposefully profiting from access to indirect-purchaser consumers in the State of New York.

8  Defendants also contracted to supply or obtain goods or revenue related to the business for Optical

9  Disk Drives. As a result of the activities described herein, Defendants:

10          a.    Caused damage to the residents of the State of New York;

11          b.    Caused damage in the State of New York by acts or omissions committed

12                outside the State of New York by regularly doing or soliciting business in

13                the State of New York;

14          c.    Engaged in persistent courses of conduct within the State of New York

15                and/or derived substantial revenue from the marketing of Optical Disk

16                Drives or the products in which they are used in the State of New York (and

17                services relating to such marketing); and

18          d.    Committed acts or omissions that they knew or should have known would

19                cause damage (and did, in fact, cause such damage) in the State of New

20                York while regularly doing or soliciting business in the State of New York,

21                engaging in other persistent courses of conduct in the State of New York,

22                and/or deriving substantial revenue from the marketing of Optical Disk

23                Drives or the products in which they are used in the State of New York.

24    12.    The conspiracy described herein affected adversely every person nationwide and in

25  the State of New York identified in this Complaint who indirectly bought Defendants' Optical

26  Disk Drives. Defendants' conspiracy has resulted in an adverse monetary effect on indirect

27  purchasers in the State of New York identified herein.

28    13.    Prices of Optical Disk Drives in the State of New York can be manipulated by

1   conspirators within New York, outside of it, or both. Without enforcing the antitrust and unfair

2   competition laws of the State of New York, companies that break the law will go unpunished.

3   Defendants knew that commerce in the State of New York identified herein would be adversely

4   affected by implementing their conspiracy.

5

## III.    THE PARTIES

6   **The Plaintiffs**

7         14.     During the Class Period, the following named Plaintiffs indirectly purchased

8   Optical Disk Drives from one or more Defendants named herein for end use and not for resale.

9         15.     Plaintiff Cynthia R. Rall, a resident of New York, indirectly purchased an Optical

10   Disk Drive when she purchased a personal computer during the Class Period, and was injured as a

11   result of Defendants' illegal conduct.

12         16.     Plaintiff Richard R. Rall, a resident of New York, indirectly purchased Optical Disk

13   Drives when he purchased a personal computer, a DVD player, a Blu-Ray player, and a Nintendo

14   Wii gaming console during the Class Period, and was injured as a result of Defendants' illegal

15   conduct.

16   **The Defendants**

17         17.     Defendant Sony Corporation is a business entity under the laws of Japan, with a

18   principal place of business at 1-7-1, Konan, Minato-Ku, TKY 108-0075, Japan. During the Class

19   Period, Defendant Sony Corporation manufactured, sold, and/or distributed Optical Disk Drives

20   throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

21         18.     Defendant Sony OptiArc Inc. is the parent corporation of Sony OptiArc America, Inc.

22   and is organized under the laws of Japan, with its principal place of business at Gate City Osaki West

23   Tower, 5F, 1-11-1, Osaki, Shinagawa-Ku, TKY 141-0032, Japan. During the Class Period,

24   Defendant Sony OptiArc Inc. manufactured, sold, and/or distributed Optical Disk Drives

25   throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

26         19.     Defendant Sony OptiArc America Inc. is a corporation organized under the laws of

27   Delaware, with its principal place of business at 1730 N. First Street, San Jose, California, 95112.

28   Sony OptiArc America Inc. is formerly known as Sony NEC OptiArc, Inc. and is a wholly owned

1 subsidiary of Sony OptiArc, Inc. During the Class Period, Defendant Sony OptiArc America Inc.

2 manufactured, sold, and/or distributed Optical Disk Drives throughout the United States, directly or

3 through its predecessors, affiliates and/or subsidiaries.

4     20.     Defendants Sony Corporation, Sony OptiArc America Inc., and Sony OptiArc, Inc.

5 are referred to collectively herein as "Sony".

6     21.     Defendant TEAC Corporation is a business entity organized under the laws of Japan,

7 with its principal place of business at 1-47 Ochiai, Tama-shi, Tokyo, Japan. TEAC Corporation

8 controls TEAC America Inc. During the Class Period, Defendant TEAC Corporation manufactured,

9 sold, and/or distributed Optical Disk Drives throughout the United States, directly or through its

10 predecessors, affiliates and/or subsidiaries.

11     22.     Defendant TEAC America, Inc. is a business entity organized under the laws of

12 California, with its principal place of business at 7733 Telegraph Rd., Montebello, California. TEAC

13 America Inc. is a wholly owned subsidiary of Defendant TEAC Corporation. During the Class

14 Period, Defendant TEAC America Inc. manufactured, sold, and/or distributed Optical Disk Drives

15 throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

16     23.     Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its

17 principal place of business at 4-6 Kanda-Surugadai Chiyoda-ku, Tokyo, Japan. Hitachi Ltd. is one of

18 the parent corporations of a jointly-owned subsidiary, Hitachi-LG Storage Inc. During the Class

19 Period, Defendant Hitachi Ltd. manufactured, sold, and/or distributed Optical Disk Drives

20 throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

21     24.     Defendant LG Electronics Inc. is a business entity organized under the laws of Korea,

22 with its principal place of business at 26/F Twin Tower South 20, Yoido-Dong, Youngdungpo-Gu,

23 Seoul, SEO 150875, Republic of Korea. LG Electronics Inc. is the one of the parent corporations of a

24 jointly-owned subsidiary, Hitachi-LG Storage Inc. During the Class Period, Defendant LG

25 Electronics Inc. manufactured, sold, and/or distributed Optical Disk Drives throughout the United

26 States, directly or through its predecessors, affiliates and/or subsidiaries.

27     25.     Defendant Hitachi-LG Data Storage Inc. is a business entity organized under the laws

28 of Japan, with its principal place of business at 4F MSC Center Building, 22-23 Kaigan 3-chome,

6

1 Tokyo Japan. Hitachi-LG Storage Inc. is joint venture formed in 2001, and is 51% owned by Hitachi
2 Ltd. and 49% owned by LG Electronics Inc. During the Class Period, Defendant Hitachi-LG Data
3 Storage Inc. manufactured, sold, and/or distributed Optical drive products throughout the United
4 States, directly or through its predecessors, affiliates and/or subsidiaries.

5     26.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan,
6 with its principal place of business at 1-1, Shibaura 1-chome, Minat-ku, Tokyo, 105-8001, Japan.
7 Toshiba Corp. is one of the parent corporations of a jointly-owned subsidiary, Toshiba Samsung
8 Storage Technology Corp. During the Class Period, Defendant Toshiba Corporation manufactured,
9 sold, and/or distributed Optical Disk Drives throughout the United States, directly or through its
10 predecessors, affiliates and/or subsidiaries.

11     27.    Defendant Samsung Electronics Co, Ltd. is a business entity organized under the laws
12 of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-
13 ro Chung-gu, Seoul, Korea. Samsung Electronics Co., Ltd. is one of the parent corporations of a
14 jointly-owned subsidiary, Toshiba Samsung Storage Technology Corp. During the Class Period,
15 Defendant Samsung Electronics Co, Ltd. manufactured, sold, and/or distributed Optical Disk Drives
16 throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

17     28.    Defendant Toshiba Samsung Storage Technology Corp. is a business entity organized
18 under the laws of Japan, with its principal place of business at Solid Square 580, Horikawacho,
19 Saiwai-ku, Kawasaki, KNG 212-0013 Japan. Toshiba Samsung Storage Technology Corp. is a joint
20 venture established in 2004, and is 51% owned by Toshiba Corporation and 49% owned by Samsung
21 Electronics Co. During the Class Period, Defendant Toshiba Samsung Storage Technology Corp.
22 manufactured, sold, and/or distributed Optical Disk Drives throughout the United States, directly or
23 through its predecessors, affiliates and/or subsidiaries.

24     29.    Defendant Koninklijke Philips Electronics N.V. ("Philips") is a business entity
25 organized under the laws of The Netherlands, with its principal place of business at
26 Groenewoudseweg 1, Einhoven 5621 BA, The Netherlands. Philips controls itself and jointly owns
27 other entities such as Philips & Lite-On Digital Solutions Corporation. During the Class Period,
28 Defendant Philips manufactured, sold, and/or distributed Optical Disk Drives throughout the

1 | United States, directly or through its predecessors, affiliates and/or subsidiaries.

2 |     30.     Defendant Lite-On IT Corporation ("Lite-On") is a business entity organized under
3 | the laws of Taiwan, with its principal place of business at 12-15F, Jui Kuand Road, Taipei City, TAP,
4 | 11492, Taiwan. Lite-On controls itself and jointly owns other entities such as Philips & Lite-On
5 | Digital Solutions Corporation. During the Class Period, Defendant Lite-On manufactured, sold,
6 | and/or distributed Optical Disk Drives throughout the United States, directly or through its
7 | predecessors, affiliates and/or subsidiaries.

8 |     31.     Defendant Philips & Lite-On Digital Solutions Corporation is a business entity
9 | organized under the laws of Taiwan, with its principal place of business at 16F, 392, Jui Kuang Road,
10 | Taipei City, TAP, 11492, Taiwan. Philips & Lite-On Digital Solutions Corporation is a joint venture
11 | between Philips and Lite-On established in 2007. During the Class Period, Defendant Philips &
12 | Lite-On Digital Solutions Corporation manufactured, sold, and/or distributed Optical Disk Drives
13 | throughout the United States, directly or through its predecessors, affiliates and/or subsidiaries.

14 |     32.     Defendant Philips & Lite-On Digital Solutions USA, Inc. is a business entity
15 | organized under the laws of Delaware, with its principal place of business at 42000 Christy Street,
16 | Fremont, California, 94538. Philips & Lite-On Digital Solutions USA Inc. is a joint venture between
17 | Philips and Lite-On established in 2007. During the Class Period, Defendant Philips & Lite-On
18 | Digital Solutions USA Inc. manufactured, sold, and/or distributed Optical Disk Drives throughout
19 | the United States, directly or through its predecessors, affiliates and/or subsidiaries.

20 | **Co-Conspirators**

21 |     33.     Various persons and entities, whose identities are at this time unknown to Plaintiffs,
22 | participated as co-conspirators in the violations alleged herein and performed acts and made
23 | statements in furtherance thereof. When Plaintiffs learn the identities of such co-conspirators,
24 | Plaintiffs will seek leave to amend this Complaint to add such co-conspirators as Defendants.

25 |     34.     The acts charged in this Complaint have been done by Defendants and their co-
26 | conspirators, or were authorized, ordered, or done by their respective officers, agents, employees,
27 | or representatives while actively engaged in the management of each defendant's business or
28 | affairs.

1    35.    Each Defendant named herein acted as the agent or joint venturer of or for other

2  Defendants with respect to the acts, violations and common course of conduct alleged herein.

3  Each Defendant that is a subsidiary of a foreign parent acts as the United States agent for Optical

4  Disk Drives made by its parent company.

5                          **IV.    FACTUAL ALLEGATIONS**

6  **Nature of Commerce.**

7    36.    During the Class Period, Defendants' annual sales of Optical Disk Drives has been

8  in the billions of dollars.

9    37.    In 2008, Samsung estimated that 313 million Optical Disk Drives were sold for

10  personal computers annually, and that more than 200 million Optical Disk Drives were sold

11  annually for all other applications, including CD and DVD players and recorders, camcorders,

12  game consoles, and automotive audio and video units.

13  **Optical Disk Drive Technology and Industry Background.**

14    38.    Optical disks contain microscopic pits for storing data. These pits are made from a

15  crystalline metal alloy and typically are pressed into the disc in a spiral arrangement, beginning at

16  the disk's center. An Optical Disk Drive will spin an inserted disk, while a lens inside the device

17  guides a semiconductor laser beam to scan the disk's surface, and a photodiode detects the light

18  reflected from the disk's bumps and pits. The photodiode reads the light's reflection as a binary

19  code, a series of ones and zeros that can be translated by a computer to usable data. As the laser

20  strikes the pits, the photodiode detects changes in the intensity of the beams and translates those

21  beams into electrical signals. Disks with a greater number of pits can store more data. Additional

22  layers also can be added to disks to increase storage capacity.

23    39.    The pits are approximately 0.8 micrometers on CDs, 0.4 micrometers on DVDs, and

24  0.15 micrometers on Blu-Ray disks. Optical Disk Drives must have lasers of different

25  wavelengths to read the various disk formats. For example, Blu-Ray disk players use a shorter

26  wavelength laser, blue-violet, to read disks.

27    40.    Optical Disk Drives also can be equipped with technology to write and/or re-write

28  information on certain types of disks. Optical Disc Drives that can write or re-write data are

1   commonly referred to as "burners" or "writers." Different types of Optical Disc Drives contain
2   various speeds for accessing and writing data.

3       41.     When a recordable disk such as a CD-R, DVD-R or Blu-Ray-R is inserted into an
4   appropriate Optical Disc Drive, the unit's laser is used to selectively heat parts of the organic
5   photosensitive dye layer. The reflective properties of the disk's surface change as the disk is
6   exposed to the laser beam, causing the photodiode to recognize these surface changes as bumps
7   and pits and to read the new information on the disk.

8       42.     Sony and Philips jointed invented audio CDs and the initial Optical Disk Drives that
9   read them. In 1972, Philips announced that it had invented a technique for storing audio
10  recordings on small diameter optical disks. Concurrently, Sony was developing techniques for
11  storing audio recordings on larger diameter optical disks while focusing on error correction
12  techniques. In 1978, Sony and Philips agreed on a single disk format and error correction method.
13  They introduced CDs and CD players to the public in 1982. Since the 1980s, several companies
14  adopted the standards established by Sony and Philips to create other Optical Disk Drive
15  technologies.

16      43.     After Sony and Philips established standards for creating CDs and Optical Disk
17  Drives to read them, CD-ROM drives began to penetrate the computer market. Optical Disk
18  Drives have been commonly used in computers since the 1990s, when CD-ROM drives became
19  affordable for the average consumer. Manufacturers subsequently developed Optical Disk Drive
20  technologies including DVD and Blu-Ray that can read, write and store greater amounts of data
21  than CD-ROMs.

22      44.     Today, Optical Disk Drives are standard components of almost every computer used
23  in the United States. Due to the increasing popularity of personal and laptop computers,
24  Defendants manufacture, distribute and sell hundreds of millions of Optical Disk Drives each year,
25  generating billions of dollars in annual revenues. Worldwide Optical Disk Drive shipments
26  reached over 300 million in 2007, and generated over $45 billion in sales revenue between 2004
27  and 2008.

28

1 **Opportunity for Collusion.**

2    45.    At all times prior to and during the Class Period, the Optical Disk Drive industry

3 exhibited certain characteristics that facilitate a conspiracy among industry participants, including

4 market concentration, ease of information sharing, interrelated business relationships, significant

5 barriers to entry, and standardization of Optical Disk Drive Products.

6 **Market Concentration and Joint Ventures.**

7    46.    According to published reports, during the Class Period, the Optical Disk Drive

8 industry has been dominated by Defendants and their co-conspirators. During the Class Period,

9 Defendant Philips & Lite-On Digital Solutions Corporation had a 30% market share. The joint

10 venture between Defendants Hitachi and LG Electronics, Defendant Hitachi-LG Data Storage Inc.,

11 had a 27% market share. The joint venture between Defendants Toshiba and Samsung, Defendant

12 Toshiba Samsung Storage Technology Corp., had a 20% market share. And, Defendant Sony

13 Optiarc America, Inc. had a 17% market share. Together these Defendants control over 90% of the

14 global market for Optical Disk Drives.

15    47.    In October 2000, Defendants Hitachi and LG Electronics joined together to form

16 Defendant Hitachi-LG Data Storage Inc., a joint venture company for the development, design, and

17 marketing of Optical Disk Drives.

18    48.    In April 2003, Defendants Samsung Electronics and Toshiba Corporation signed a

19 memorandum of understanding. In January 2004, these Defendants concluded an agreement to

20 integrate their Optical Disk Drive businesses into a single entity. In April 2004, Defendant Toshiba

21 Samsung Storage Technology Corp. was launched to develop, market, and design Optical Disk

22 Drives.

23    49.    In April 2006, Defendant Sony Corporation and NEC Corporation joined forces to

24 create Sony NEC Optiarc Inc. At the formation of the joint venture, Sony had a 55% stake. In

25 September 2008, Sony purchased NEC Corp.'s interest in the joint venture, and renamed it Sony

26 Optiarc Inc., a Defendant herein.

27    50.    In 2006, Defendant Lite-On IT Corporation acquired BenQ's Optical Disk Drive

28 business to become the second-largest Optical Disk Drive manufacturer in the world. The business

1  was renamed Philips & Lite-On Digital Solutions Corporation, a Defendant herein.

2      51.     The joint ventures of each of these Defendants allowed them to share and have

3  access to each of their parent companies' patents and technologies without the need to pay

4  royalties. The formation of these joint ventures was the product of the exchange of information,

5  and facilitates an ongoing antitrust conspiracy between Defendants.

6      52.     The mutually beneficial nature of the business relationships between certain

7  Defendants not only afforded them the opportunity to conspire, but also created a financial

8  incentive for them to do so. According to a spokesman for Defendant Sony Corporation,

9  Defendant Sony NEC Optiarc, Inc. came into existence because, "There was a feeling that those

10  two complementary strengths [Sony Corporation and NEC Corporation] would make more sense

11  in a joint venture than competing against each other."

12  **Barriers to Entry.**

13      53.     There are significant manufacturing and technological barriers to entry into the

14  Optical Disk Drive industry. Companies must spend hundreds of millions of dollars in research

15  and development, licensing, and manufacturing of products to compete in the Optical Disk Drive

16  industry. Defendants' ownership and control over Optical Disk Drive technology and market share

17  has enabled Defendants to dictate the terms and costs by which other companies can enter the

18  market. These barriers to entry have created significant difficulty for smaller manufacturers of

19  Optical Disk Drives to compete with Defendants and overcome the effects of economies of scale.

20  As a result, the financial structure of the Optical Disk Drive industry has allowed Defendants to

21  implement their conspiracy to restrict competition and fix, maintain, and stabilize prices for

22  Optical Disk Drives at supra-competitive levels without losing market share.

23      54.     Price-fixing and market allocation are easier to attain within a highly concentrated,

24  fungible market for which adequate substitutes do not exist. All of these factors facilitate the

25  implementation and maintenance of an antitrust conspiracy such as that perpetrated by Defendants

26  and alleged herein. The facts do not support a finding of conscious parallelism. Instead, it is

27  evident from the facts that Defendants communicated and conspired to the detriment of Optical

28  Disk Drive consumers.

**Trade Associations and Business Organizations.**

55. During the Class Period, Defendants belonged to trade and business organizations that focused on Optical Disk Drives and related industries. These organizations include the DVD Forum, the Optical Storage Technology Association ("OSTA"), and the International Symposium of Optical Memory ("ISOM").

56. The DVD Forum is a global group of hardware manufacturers, software firms, and content providers. It was established in 1997. The DVD Forum is responsible for the licensing and distribution of DVD products. The DVD Forum states that its "purpose is to exchange and disseminate ideas and information about the DVD Format and its technical capabilities, improvements and innovations." Defendants Hitachi, LG Electronics, Lite-On, Philips, Samsung, Sony, and Toshiba are members of the DVD Forum.

57. Defendants Hitachi, LG Electronics, Samsung, Sony, and Toshiba are also members of the DVD Forum's Steering Committee. The Steering Committee's last meeting took place on September 10, 2009 at the Universal Hilton Hotel in Los Angeles, California. During that meeting, Defendants and their co-conspirators communicated with each other about the price-fixing conspiracy and agreed to continue to fix, maintain, and stabilize prices for Optical Disk Drives.

58. Defendants LG Electronics and Sony Corporation are members of OSTA. According to OSTA's website, the organization was "incorporated as an international trade association in 1992 to promote the use of writable optical technologies and products for storage of computer data. The organization's membership includes optical product manufacturers and resellers from three continents, representing more than 85 percent of worldwide writable optical product shipments. They work to shape the future of the industry through regular meetings of CD/DVD, file interchange, market development, magneto-optical and planning committees."

59. The most recent meeting of the OSTA took place on March 16-18, 2009 at the Pacific Business Centers in Cupertino, California. Representatives, agents or employees of all Defendants were present at that meeting. During that meeting, Defendants were able to and did meet and communicate with each other regarding the price-fixing conspiracy. This meeting of the OSTA enabled Defendants to exchange sensitive pricing information and ensured that Defendants

1 | charged the same or similar prices for Optical Disk Drives.

2 | 60. The Blu-Ray Disc Association is a worldwide group established in 2005 to promote
3 | the Blu-Ray format and associated products, to establish standardized formats, and to cross-license
4 | technology. Defendants Hitachi, LG Electronics, Philips, Samsung, Sony, and Toshiba are
5 | members of the Blu-Ray Disc Association.

6 | 61. Defendants Sony, LG Electronics, Samsung. and Hitachi participated in the first
7 | meeting of Blu-Ray patent owners in Los Angeles, California on July 6-7,2006. The stated
8 | purpose of this meeting was to establish joint licensing agreements for Optical Disk Drive
9 | technologies between the participants.

10 | 62. The International Consumer Electronics Show is the world's largest consumer
11 | electronics show. The 2010 International Consumer Electronics Show was held on January 7-10,
12 | 2010 at the Venetian Hotel in Las Vegas, Nevada. During that event, Defendants and their co-
13 | conspirators communicated with each other about the price-fixing conspiracy.

14 | 63. Defendants and their representatives, agents, and employees attended multiple
15 | meetings and conferences organized by these and other industry groups both before and during the
16 | Class Period, affording Defendants the opportunity to meet, discuss, and agree upon their pricing
17 | of Optical Disk Drives.

18 | 64. Defendants' use of industry associations to further their conspiracy with respect to
19 | the Optical Disk Drive market is consistent with their prior conduct with respect to price-fixing
20 | conspiracies for other markets. In particular, Defendants and their affiliates and co-conspirators
21 | participated in trade associations and attended industry meetings to further their conspiracies to fix,
22 | maintain and stabilize prices for dynamic random access memory ("DRAM"), static random access
23 | memory ("SRAM"), flash memory, thin film transistor liquid crystal display ("TFT-LCDs"), and
24 | cathode-ray tubes ("CRTs").

25 | **Standardization of Optical Disk Drives.**

26 | 65. Since its inception in the 1970s, the Optical Disk Drive industry has been typified
27 | by standardization of disks (e.g., CD-ROMs, DVD-ROMs) and Optical Disk Drive Products driven
28 | by industry participants and a variety of industry-related organizations such as ECMA

1  International, the International Standardization Organization ("ISO"), and the International

2  Electrotechnical Commission ("IEC"). These organization and their members are dedicated to

3  "standardizing the use of information communication technology and consumer electronics."

4      66.    The Optical Disk Drive industry is also subject to patents and intellectual property

5  rights which require adoption of standardized products specifications.

6      67.    The standardization of Optical Disk Drives and Optical Disk Drive Products has

7  enabled Defendants to implement, enforce, and oversee their anticompetitive conspiracy to fix the

8  price of Optical Disk Drives and Optical Disk Drive Products. As a result of this standardization,

9  Optical Disk Drives and Optical Disk Drive Products have become commodity products.

10  Consumers make purchasing decisions for these products based largely, if not exclusively, on

11  price.

12  **Collusion on Prices for Optical Disk Drives.**

13      68.    Faced with shrinking profits, Defendants conspired to fix, raise, maintain, and

14  stabilize the price of Optical Disk Drives and Optical Disc Drive Products in the United States at

15  artificially inflated and anticompetitive levels to preserve and increase their revenues.

16      69.    Defendants have been the subject of government investigations for their cartel

17  activity in recent years. For example, Defendant Samsung admitted guilt and paid a $300 million

18  fine following an investigation by the U.S. Department of Justice ("DOJ") into price-fixing of

19  DRAM computer chips.

20      70.    The DOJ is currently investigating Defendants Samsung, LG Electronics, Toshiba,

21  and Hitachi, among others, concerning collusion among manufacturers of TFT-LCDs. The

22  ongoing TFT-LCD criminal investigation has resulted in hundreds of millions of dollars in

23  criminal penalties. LG Electronics and Hitachi have both pled guilty to price fixing in the TFT-

24  LCD market and have been fined $400 million and $31 million, respectively.

25      71.    The European Union ("EU") has also investigated these same companies for

26  anticompetitive practices in the TFT-LCD market. In addition, in November 2007, the EU fined

27  Defendant Sony and various related entities and the Hitachi Maxell Limited joint venture $110

28  million for fixing the prices of professional videotapes sold in Europe between 1999 and 2002.

1 | The European Commission also fined Hitachi and Toshiba for their roles in a conspiracy to control
2 | prices and allocate market shares in the market for gas-insulated switchgear between 1988 and
3 | 2004.

4 |     72.    On October 7,2009, the Japan Fair Trade Commission issued a cease-and-desist
5 | order and levied $37.4 million in fines against five companies, including Korean affiliates of
6 | Defendants Samsung, LG Electronics, and Philips for their alleged participation in a price-fixing
7 | cartel for CRTs.

8 |     73.    The pattern of illegal conduct by Defendants Hitachi, LG Electronics, Samsung,
9 | Philips, and Sony in a wide variety of product markets is illustrative of Defendants' respective
10 | corporate cultures. Those cultures encourage collusion with competitors to create additional profits
11 | for their companies at the expense of consumers.

12 |     74.    The DOJ has commenced a grand jury investigation into anticompetitive conduct in
13 | the Optical Disk Drive industry, involving several Defendants named herein. The grand jury
14 | investigation implies that DOJ attorneys have concluded that sufficient evidence exists to believe a
15 | criminal violation of the antitrust laws has occurred. On October 26,2009, Defendants Sony
16 | Optiarc America, Inc., TSST and Hitachi-LG Data Storage, Inc. confirmed that they received
17 | subpoenas from the DOJ in connection with a criminal antitrust investigation into price-fixing, bid-
18 | rigging, and allocation of markets for Optical Disk Drives. According to various news reports, the
19 | EU and Singaporean antitrust authorities are undertaking similar investigations.

20 |     75.    On October 27,2009, a spokesperson for the DOJ confirmed that, "[t]he Antitrust
21 | Division is investigating the possibility of anticompetitive practices in the Optical Disc Drive
22 | industry."

23 |     76.    In a Form 6-K filed with the United States Securities and Exchange Commission on
24 | November 16,2009, Defendant Hitachi disclosed the following:

25 |            In June 2009, a subsidiary in Japan received a grand jury
26 | subpoena in connection with an investigation conducted by the
Antitrust Division of the U.S. Department of Justice and received
27 | requests for information from the European Commission, both in
respect of alleged antitrust violations relating to optical disk drives.
28 | Also in June 2009, the Competition Commission of Singapore began
an investigation of a subsidiary in Korea, also in respect of alleged
antitrust violations relating to optical disk drives. Relevant

1    authorities in the markets in which Hitachi operates continue to
     investigate Hitachi and may initiate similar investigations in the
2    future. These investigations may result in significant penalties in
     multiple jurisdictions, and private parties may bring civil actions
3    against Hitachi seeking compensation for damages resulting from the
     relevant violations. Such substantial legal liability or regulatory
4    action could have a material adverse effect on Hitachi's business,
     results of operations, financial condition, cash flows, reputation and
5    credibility.

6    77.    Defendant Philips' annual report for 2009 revealed that it and PLDS also are the

7    subject of the same criminal investigations. The report stated:

8
             On October 27, 2009, the Antitrust Division of the United
9    States Department of Justice confirmed that it had initiated an
     investigation into possible anticompetitive practices in the Optical
10   Disc Drive (ODD) industry. Philips Lite-On Digital Solutions Corp.
     (PLDS), a joint venture owned by the Company and Lite-On IT
11   Corporation, as an ODD market participant, is included in this
     investigation. PLDS is also subject to similar investigations outside
12   the US relating to the ODD market. PLDS and Philips intend to
     cooperate with the authorities in these investigations. [ . . . ] These
13   matters are in their initial stages and due to the considerable
     uncertainty associated with these matters, on the basis of current
14   knowledge, the Company has concluded that potential losses cannot
     be reliably estimated with respect to these matters. An adverse final
15   resolution of these investigations and litigation could have a
     materially adverse effect on the Company's consolidated financial
16   position, results of operations and cash flows.

17   78.    On October 28,2009, it was announced that Defendants Sony and Philips were fined

18   by the Taiwan Fair Trade Commission for their anticompetitive business practices in connection

19   with their abuse of monopoly power in the licensing of CD-R technology.

20   **Effects of Defendants' Antitrust Violations.**

21   79.    The ongoing contract, combination, or conspiracy described above has had and

22   continues to have at least the following effects:

23        a.    Price competition in the sale of Optical Disk Drives by Defendants and their

24              co-conspirators has been restrained, suppressed, and eliminated throughout

25              the United States;

26        b.    Prices for Optical Disk Drives sold by Defendants have been raised, fixed,

27              maintained, and stabilized at artificially high and noncompetitive levels

28              throughout the United States; and

17

1
2
3

    c.    Indirect purchasers of Optical Disk Drives from Defendants have been deprived of the benefit of free and open competition in the purchase of Optical Disk Drives and Optical Disk Drive Products.

4
5
6
7

80.    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and other members of the proposed classes have been injured in their businesses and property in that they paid more for Optical Disk Drives and Optical Disk Drive Products than they otherwise would have paid in the absence of the unlawful conduct of Defendants.

8

## V.    THE PASS-THROUGH OF THE OVERCHARGES TO CONSUMERS

9
10
11
12
13

81.    Defendants' conspiracy to raise, fix, or maintain the price of Optical Disk Drives at artificial levels resulted in harm to Plaintiffs and the proposed classes because it resulted in them paying higher prices for Optical Disk Drive Products than they would have in the absence of Defendants' conspiracy. The entire overcharge for Optical Disk Drives at issue was passed on to Plaintiffs and members of proposed classes.

14
15
16

82.    Optical Disk Drives are commodity products, with functionally equivalent products available from Defendants, which manufacture Optical Disk Drives pursuant to standard specifications.

17
18

83.    The Optical Disk Drive market is dominated by a handful of leading manufacturers, namely, Defendants in this case.

19
20
21
22
23
24
25
26

84.    An Optical Disk Drive is purchased by a consumer as a stand-alone device or as a substantial part of an Optical Disk Drive Product. When an Optical Disk Drive is purchased by consumers as a stand-alone device, the device itself is directly traceable to the specific manufacturing Defendant. When an Optical Disk Drive is purchased by a consumer as part of an Optical Disk Drive Product, it is a distinct, physically-discrete hardware element of the end-use product and is identifiable by a specific, discrete part or model number that permits tracing. Optical Disk Drives are identifiable and traceable throughout the chain of the distribution to the end user. They do not undergo any alterations as they move through the chain of distribution.

27
28

85.    The indirect-purchaser buys an Optical Disk Drive through one of two distribution chains, either from the direct purchaser OEM, or through a reseller such as a retailer. Thus, an

1   Optical Disk Drive follows a traceable physical chain from Defendants to the OEMs, to the

2   purchasers of Optical Disk Drive Products. Tracing can help show that changes in the prices paid

3   by direct purchasers of Optical Disk Drives affect prices paid by indirect-purchasers of the Optical

4   Disk Drives themselves, or Optical Disk Drive Products.

5       86.     The OEM and the retail markets of Optical Disk Drives and Optical Disk Drive

6   Products are subject to vigorous price competition. The direct purchaser OEMs and retailers have

7   very thin net margins. They are therefore at the mercy of their component costs, such that

8   increases in the price of Optical Disk Drives and Optical Disk Drive Products lead to quick,

9   corresponding price increases at the OEM and retail levels for stand-alone Optical Disk Drives and

10  Optical Disk Drive Products.

11      87.     As a result, the inflated prices of Optical Disk Drives resulting from Defendants'

12  price-fixing conspiracy have been passed on to Plaintiffs and the other members of the proposed

13  classes by direct-purchaser manufacturers, distributors, and retailers.

14      88.     Optical Disk Drives makes up a substantial component of the cost of Optical Disk

15  Drive Products. The retail price of an Optical Disk Drive Product is determined in substantial part

16  by the cost of the Optical Disk Drive it contains.

17      89.     In retailing, it is common to use a "markup rule." The retail price is set as the

18  wholesale cost plus a percentage markup designed to recover non-product costs and to provide a

19  profit. This system guarantees that increases in costs to the retailer will be passed on to end

20  buyers.

21      90.     Unlawful overcharges for a fixed-price component result in higher prices for

22  products containing that price-fixed component.

23      91.     The economic and legal literature has recognized that unlawful overcharges in a

24  component normally result in higher prices for products containing that price-fixed component. As

25  Professor Herbert Hovenkamp, a noted antitrust scholar, has stated in his treatise, FEDERAL

26  ANTITRUST POLICY, THE LAW OF COMPETITITON AND ITS PRACTICE (1994) at 624:

27          A monopoly overcharge at the top of a distribution chain generally results in higher
            prices at every level below. For example if production of aluminum is monopolized
28          or cartelized, fabricators of aluminum cookware will pay higher prices for
            aluminum. In most cases they will absorb part of these increased costs themselves

19

1  and pass part along to cookware wholesalers. The wholesalers will charge higher
2  prices to the retail stores, and the stores will do it once again to retail consumers.
   Every person at every stage in the chain likely will be poorer as a result of the
3  monopoly price at the top.

4  Theoretically, one can calculate the percentage of any overcharge that a firm at one
   distributional level will pass on to those at the next level.

5  92.  Similarly, two other antitrust scholars – Professors Robert G. Harris (Professor

6  Emeritus and former Chair of the Business and Public Policy Group at the Haas School of

7  Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor

8  of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust)

9  – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is

10  not the exception: it is the rule."

11  93.  As Professor Jeffrey K. McKie-Mason (Arthur W. Burks Professor for Information

12  and Computer Science and Professor of Economics and Public Policy at the University of

13  Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving

14  Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class

15  certification):

16  As is well known in economic theory and practice, at least some of the overcharge
   will be passed on by distributors to end consumers. When the distribution markets
17  are highly competitive, as they are here, all or nearly the entire overcharge will be
   passed on through to ultimate consumers… Both of Microsoft's experts also agree
18  upon the economic phenomenon of cost pass through, and how it works in
   competitive markets. This general phenomenon of cost pass through is well
19  established in antitrust laws and economics as well.

20  94.  Economic and legal literature recognizes that the more pricing decisions are based

21  on cost, the easer it is to determine the pass-through rate. The directness of affected costs refers to

22  whether an overcharge affects a direct (*i.e.* variable) cost or an indirect (*i.e.*, overhead) cost.

23  Overcharges will be passed-through sooner and at a higher rate if the overcharge affects direct

24  costs. Here Optical Disk Drives are a direct (and substantial) cost of Optical Disk Drive Products.

25  95.  Other factors that lead to the pass-through of overcharges include: (i) whether price

26  changes are frequent; (ii) the duration of the anti-competitive overcharge; (iii) whether pricing

27  decisions are based on cost; (iv) whether the overcharge affects variable, as opposed to overhead,

28  costs; (v) whether the resellers' production technology is uniform; (vi) whether the reseller supply

20

1 curve exhibits a high degree of elasticity; and (vii) whether the demand of the resellers is inelastic.

2 All of these factors were present in the Optical Disk Drive market during the Class Period. The

3 precise amount of such an impact on the prices of Optical Disk Drives and Optical Disk Drive

4 Products can be measured and quantified. Commonly used and well-accepted economic models

5 can be used to measure both the extent and the amount of the supracompetitive charge passed-

6 through the chain of distribution.

7     96.     Plaintiffs and other indirect purchasers have been forced to pay supracompetitive

8 prices Optical Disk Drives and Optical Disk Drive Products. These inflated prices have been

9 passed on to them by direct purchaser manufacturers, distributors, and retailers. Those overcharges

10 have unjustly enriched Defendants.

11                **VI.   CLASS ACTION ALLEGATIONS**

12     97.     Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule

13 23 of the Federal Rules of Civil Procedure on behalf of all members of the following Class (the

14 "Nationwide Class"):

15         All natural-person citizens and entities residing in the United States
that, from October 1, 2005 through the present, purchased in the

16         United States, Optical Disk Drives indirectly from the Defendants
for their own use and not for resale. Specifically excluded from this

17         Class are the Defendants; the officers, directors or employees of any
Defendant; any entity in which any Defendant has a controlling

18         interest; and any affiliate, legal representative, heir or assign of any
Defendant. Also excluded are any federal, state or local

19         governmental entities, any judicial officer presiding over this action
and the members of his/her immediate family and judicial staff, and

20         any juror assigned to this action.

21     98.     Plaintiffs also bring this action on their own behalf and as a class action pursuant to

22 Rule 23 of the Federal Rules of Civil Procedure and/or respective New York statute, on behalf of

23 all members of the following Class (the "New York Indirect Purchaser Class"):

24         All persons and entities in New York who indirectly purchased in
New York Optical Disk Drives manufactured and/or sold by one or

25         more of the Defendants during the Class Period. Specifically
excluded from this Class are the Defendants; the officers, directors

26         or employees of any Defendant; any entity in which any Defendant
has a controlling interest; and any affiliate, legal representative, heir

27         or assign of any Defendant. Also excluded are any federal, state or
local governmental entities, any judicial officer presiding over this

28         action and the members of his/her immediate family and judicial
staff, and any juror assigned to this action.

1      99.    Plaintiffs do not know the exact size of the Classes at the present time. However,

2  Plaintiffs believe that due to the nature of the trade and commerce involved, there are at least

3  thousands in the separate New York state class, and hundreds of thousands of class members

4  geographically dispersed throughout the United States, such that joinder of all class members

5  would be impracticable.

6      100.    Plaintiffs' claims are typical of the claims of their respective Classes, and Plaintiffs

7  will fairly and adequately protect the interests of the Classes. Plaintiffs' interests are coincident

8  with, and not antagonistic to, those of the members of the Classes. Plaintiffs have retained

9  competent counsel experienced in class action and complex antitrust and consumer protection

10  litigation.

11      101.    Common questions of law and fact exist, including:

12               i.    Whether Defendants and their Co-Conspirators engaged in a

13                       contract, combination or conspiracy among themselves to fix, raise,

14                       maintain or stabilize the process of, or allocate the market of Optical

15                       Disk Drives sold in the United States;

16               ii.    The duration and extent of the contract, combination or conspiracy;

17               iii.    Whether the Defendants and their Co-Conspirators were participants

18                       in the contracts, combinations or conspiracies alleged herein;

19               iv.    Whether Defendants and their Co-Conspirators engaged in conduct

20                       that violated Section 1 of the Sherman act;

21               v.    Whether Defendants and their Co-Conspirators engaged in conduct

22                       that violated sections 349 *et seq.* of New York's General Business

23                       Law;

24               vi.    Whether the Defendants and their Co-Conspirators engaged in

25                       conduct in violation of the antitrust laws of New York as alleged

26                       below;

27

28

1      vii. Whether the anticompetitive conduct of the Defendants and their Co-

2        Conspirators caused prices of Optical Disk Drives to be artificially

3        inflated to non-competitive levels;

4      viii. Whether the Defendants and their Co-Conspirators unjustly enriched

5        themselves as a result of their inequitable conduct at the expense of

6        the members of the Classes;

7      ix. Whether Defendants and their Co-Conspirators fraudulently

8        concealed the existence of their unlawful conduct;

9      x. Whether Plaintiffs and the Classes are entitled to injunctive relief;

10       and

11      xi. Whether Plaintiffs and other members of the New York Indirect

12        Purchaser Class were injured by the conduct of Defendants and, if

13        so, the appropriate measure of damages.

14  102. These and other questions of law and fact are common to the Classes and

15 predominate over any questions affecting only individual class members, including legal and

16 factual issues relating to liability, damages, and restitution.

17  103. Class action treatment is a superior method for the fair and efficient adjudication of

18 this controversy because:

19    a. It will avoid a multiplicity of suits and consequent burden on the courts and

20     Defendants;

21    b. It would be virtually impossible for all members of the Classes to intervene

22     as parties-plaintiff in this action;

23    c. It will allow numerous individuals with claims too small to adjudicate on an

24     individual basis because of the prohibitive cost of this litigation, to obtain

25     redress for their economic injuries;

26    d. It is appropriate for treatment on a fluid recovery basis, which obviate any

27     manageability problems; and

28

1          e.      It will provide court oversight of the claims process, once Defendants'
2                  liability is adjudicated.

3          104.    The named Plaintiffs will fairly and adequately protect the interests of the
4    Nationwide Class and the New York Indirect Purchaser Class in that the named Plaintiffs have no
5    interests antagonistic to the interests of the other members of the Classes and have retained counsel
6    competent and experienced in the prosecution of class actions and antitrust cases to represent
7    themselves and the Classes.

8          105.    This case is also appropriate for certification as a class action because Defendants
9    have acted and refused to act on grounds generally applicable to the Nationwide Class, so that final
10   injunctive relief will be appropriate with respect to the Nationwide Class as a whole.

11         106.    The claims asserted herein are also appropriate for class certification under the laws
12   of the State of New York.

13                          **VII.   ACTIVE CONCEALMENT**

14         107.    Throughout and beyond the conspiracy, Defendants and their co-conspirators
15   affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants and their
16   co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their
17   higher-level executives. Defendants and their co-conspirators publicly provided pre-textual and
18   false justifications regarding their prices, including repeatedly and falsely attributing price
19   increases to increased demand, increased costs, product shortages, and lack of manufacturing
20   capacity, which justifications were made to the general public in press releases, comments to the
21   press, annual reports, and other public filings.

22         108.    Defendants and their co-conspirators concealed the true nature of their unlawful
23   conduct and acts in furtherance thereof, and actively concealed their activities through various
24   other means and methods to avoid detection. Plaintiff did not discover, and could not have
25   discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators
26   were violating the antitrust laws as alleged herein until October 26, 2009.

27         109.    Defendants also took affirmative acts to conceal the conspiracy including issuing
28   public statements falsely stating the Optical Disk Drives were competitively priced. For instance,

                                        24

1  on June 4, 2007, Defendant Sony issued a press release falsely stating that its Blu-Ray disk player

2  "gives a broader consumer segment the opportunity to experience the exceptional quality of Bluray

3  format at a competitive price."

4      110.    As a result of the active concealment of the conspiracy by Defendants and their co-

5  conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations

6  herein have been tolled.

7  ## VIII.   VIOLATIONS ALLEGED

8  ### First Claim for Relief
### (Violation of Section 1 of the Sherman Act)

9

10      111.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

11  allegation set forth in the preceding paragraphs of this Complaint.

12      112.    Beginning at a time currently unknown to Plaintiffs, but at least as early as October

13  1, 2005, and continuing through the present, the exact dates being unknown to Plaintiffs,

14  Defendants and their co-conspirators entered into a continuing agreement, understanding, and

15  conspiracy in restraint of trade artificially to fix, raise, stabilize, and peg prices for Optical Disk

16  Drives and Optical Disk Drive Products in the United States, in violation of Section 1 of the

17  Sherman Act (15 U.S.C. § 1).

18      113.    In formulating and carrying out the alleged agreement, understanding, and

19  conspiracy, Defendants and their co-conspirators did those things that they combined and

20  conspired to do, including but not limited to the acts, practices, and course of conduct set forth

21  above, and the following, among others:

22          a.    Fixing, raising, stabilizing, and pegging the price of Optical Disk Drives;

23              and

24          b.    Allocating among themselves and collusively reducing the production of

25              Optical Disk Drives.

26      114.    The combination and conspiracy alleged herein has had the following effects,

27  among others:

28

1    a. Price competition in the sale of Optical Disk Drives has been restrained,

2    suppressed, and/or eliminated in the United States;

3    b. Prices for Optical Disk Drives sold by Defendants and their co-conspirators

4    have been fixed, raised, maintained and stabilized at artificially high, non-

5    competitive levels throughout the United States; and

6    c. Those who purchased Optical Disk Drives directly or indirectly from

7    Defendants and their co-conspirators have been deprived of the benefits of

8    free and open competition.

9    115.    Plaintiffs and other Nationwide Class members have been injured and will continue

10   to be injured in their businesses and property by paying more for Optical Disk Drives purchased

11   indirectly from Defendants and their co-conspirators than they would have paid and will pay in the

12   absence of the combination and conspiracy, including paying more for Optical Disk Drive

13   Products, as a result of higher prices paid for Optical Disk Drives by the direct purchasers of such

14   Optical Disk Drives.

15   116.    Plaintiffs and the Nationwide Class are entitled to an injunction against Defendants,

16   preventing and restraining the violations alleged herein.

17   **Second Claim for Relief**
     **(Unjust Enrichment and Disgorgement of Profits)**

18   117.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

19   allegation set forth in the preceding paragraphs of this Complaint.

20   118.    Defendants have been unjustly enriched through overpayments by Plaintiffs and

21   class members and the resulting profits.

22   119.    Under common law principles of unjust enrichment, Defendants should not be

23   permitted to retain the benefits conferred via overpayments by Plaintiffs and class members.

24   120.    Plaintiffs and class members in the State of New York seek disgorgement of all

25   profits resulting from such overpayments and establishment of a constructive trust from which

26   Plaintiffs and class members may seek restitution.

27

28

1

## Third Claim for Relief
### (Violation of the New York Gen. Bus. Law §§349 *et seq*.)

121. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

122. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the following state consumer protection and unfair competition statute:

123. Defendants have violated New York Gen. Bus. Law §§ 349 *et seq*. Specifically:

a. Defendants engaged in commerce in New York;

b. Defendants and their co-conspirators secretly agreed to raise prices by direct agreement on bids to customers located in New York and through artificial supply restraints on the entire Optical Disk Drive market;

c. New York consumers were targets of conspiracy;

d. The secret agreements were not know to New York consumers;

e. Defendants made public statements about the price of Optical Disk Drives that the Defendants knew would have been seen by New York Consumers; such statements either omitted material information that rendered these statements that they made materially misleading or affirmatively misrepresented the real cause of the price increase for Optical Disk Drives; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information;

f. Because of Defendants' unlawful trade practices in the State of New York, there was a broad impact on New York consumer class members who indirectly purchased Optical Disk Drives; and consumer class members have been injured because they paid more for Optical Disk Drives than the would have paid in the absence of Defendants' unlawful trade acts and practices;

g. Because of Defendants unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Optical Disk Drives were misled to believe that they were paying a fair price for the Optical Disk Drive or that the price increase for Optical Disk Drives were for valid business reasons; and similarly situated consumers were

27

1 potentially affected by Defendants' conduct;

2       h.   Defendants knew that their unlawful trade practices with respect to pricing

3 of Optical Disk Drives would have an impact on New York consumers and not just Defendants'

4 direct customers;

5       i.   Defendants knew that their unlawful trade practices with respect to pricing

6 of Optical Disk Drives would have a broad impact, causing consumer class members who

7 indirectly purchased Optical Disk Drives to be injured by paying more for Optical Disk Drives then

8 they would have paid in the absence of Defendants' unlawful trade acts and practices; and

9       j.   Defendants' consumer-oriented violations adversely affected the public

10 interest in the State of New York.

**Fourth Claim for Relief**
**(Violation of the Donnelly Act. N.Y. Gen Bus. L. §340 et seq.)**

12    124.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

13 allegation set forth in the preceding paragraphs of this Complaint.

14    125.   Beginning at a date unknown to Plaintiffs, but not later than October 1, 2005, and

15 continuing through the present, Defendants and their co-conspirators engaged in a contract,

16 agreement, arrangement and combination in unreasonable restraint of business, trade, and

17 commerce in violation of the Donnelly Act, N.Y. Gen. Bus. L. §§ 340 et seq.

18    126.   The contract, combination, agreement and arrangement consisted of among other

19 things, an agreement by the Defendants to secretly fix, coordinate and raise their Optical Disk

20 Drive prices.

21    127.   This unlawful cartel and the following effect, among others:

22       a.   Price competition ins the sale of Optical Disk Drives was suppressed and/or

23 eliminated;

24       b.   Prices for Optical Disk Drives sold be defendants and their co-conspirators

25 were fixed, raised, maintained, and stabilized at artificially high, non-competitive levels;

26       c.   Plaintiffs of Optical Disk Drives and products containing Optical Disk

27 Drives were deprived of the benefits of free and open competition, and paid artificially high, supra-

28 competitive prices for Optical Disk Drives and products containing Optical Disk Drives, or

28

1  purchased products that were otherwise of lower quality, than would have been absent the

2  conspirators illegal acts, or were unable to purchase products that they would have otherwise have

3  purchased absent the illegal conduct.

4        128.    The conduct set forth above is a *per se* violation of the Donnelly Act.

5        129.    As a result of the conspiracy, the Plaintiffs and Class members were injured in the

6  business and property. The paid higher prices for Optical Disk Drives and products containing

7  Optical Disk Drives than they otherwise would have paid in a competitive market.

8  ### IX.    PRAYER FOR RELIEF

9      WHEREFORE, plaintiffs pray:

10      A.    That the Court determine that the claims alleged herein under the Sherman Act, the

11  New York Donnelly Act and Gen. Bus. L §349, may be maintained as class actions under Rules

12  23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as informed by the respective state

13  class action laws.

14      B.    That the unlawful conduct, contract, conspiracy or combination alleged herein be

15  adjudged and decreed to be:

16            1.    A restraint of trade or commerce in violation of Section 1 of the Sherman

17                  Act, as alleged in the First Claim for Relief;

18            2.    Acts of unjust enrichment as set forth in the Second Claim for Relief herein;

19            3.    An unlawful combination, trust, agreement, understanding, and/or concert of

20                  action in violation of the antitrust laws of New York State as alleged in the

21                  Fourth Claim for Relief; and

22            4.    Violations of the New York Unfair Competition Law identified in the Third

23                  Claim for Relief herein.

24      C.    That Plaintiffs and the Classes alleged herein recover damages, to the maximum

25  extent allowed under such laws as provided by the state antitrust and unfair competition laws of

26  New York, and that a joint and several judgment in favor of plaintiffs and the Class be entered

27  against Defendants in an amount to be trebled to the extent permitted by such laws;

28      D.    That Plaintiffs and the Classes alleged herein obtain equitable relief including

1 | restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which
2 | may have been obtained by Defendants as a result of their illegal business practices, pursuant to the
3 | New York Gen. Bus. Law §§ 349 *et seq*.

4 |      E.     That Defendants, their affiliates, successors, transferees, assignees, and the officers,
5 | directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on
6 | their behalf or in concert with them, be permanently enjoined and restrained from in any manner
7 | continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged
8 | herein, or from entering into any other conspiracy alleged herein, or from entering into any other
9 | contract, conspiracy or combination having a similar purpose or effect, and from adopting or
10 | following any practice, plan, program, or device having a similar purpose or effect;

11 |      F.     That the Court enter an order of divestiture requiring defendants to rescind and/or
12 | dissolve the cooperation agreements, joint ventures and/or cross-license agreements alleged herein
13 | between and among them used to facilitate the conspiracy alleged herein;

14 |      G.     That Plaintiffs and members of the Class be awarded restitution, including
15 | disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and
16 | acts of unjust enrichment;

17 |      H.     That Plaintiffs and members of the Class be awarded pre- and post-judgment
18 | interest as provided by law, and that such interest be awarded at the highest legal rate from and
19 | after the date of service of the initial complaint in this action;

20 |      I.     That Plaintiffs and members of the Class recover their costs of suit, including a
21 | reasonable attorney's fee, as provided by law; and

22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

1    J.      That Plaintiffs and members of the Class have such other, further, and different

2    relief as the case may require and the Court may deem just and proper under the circumstances.

3

4    Dated: May 5, 2010

5                                                 Francis O. Scarpulla  (41059)
                                                  Craig C. Corbitt (83251)
6                                                 Christopher T. Micheletti (136446)
                                                  Judith A. Zahid (215418)
7                                                 Patrick B. Clayton (240191)
                                                  Qianwei Fu (242669)
8                                                 ZELLE HOFMANN VOELBEL & MASON LLP
                                                  44 Montgomery Street, Suite 3400
9                                                 San Francisco, CA 94104
                                                  Telephone:     (415) 693-0700
10                                                Facsimile:     (415) 693-0770
                                                  *fscarpulla@zelle.com*

11                                                Christopher Lovell (NY Bar No. CL-2595)
                                                  Craig M. Essenmacher (MI Bar No. P56985)
12                                                Keith Essenmacher (MI Bar No. P60945)
                                                  Fred T. Isquith Jr. (NY Bar No. FI-1064)
13                                                LOVELL STEWART HALEBIAN LLP
                                                  61 Broadway, Suite 501
14                                                New York, New York 10006
                                                  Telephone:     (212) 608-1900
15                                                Facsimile:     (212) 719-4775
                                                  *clovell@lshllp.com*

16
                                                  Michael L. Belancio  (KS Bar No. 19395)
17                                                Foland, Wickens, Eisfelder, Roper & Hofer, P.C.
                                                  911 Main Street, 30th Floor
18                                                Kansas City, Missouri 64105
                                                  Telephone:     (816) 472-7474
19                                                Facsimile:     (816) 472-6262
                                                  *mbelancio@fwpclaw.com*

20
                                                  *Attorneys for Plaintiffs and the Proposed Classes*
21

22

23

24

25

26

27

28

31
CLASS ACTION COMPLAINT

1

## JURY TRIAL DEMAND

2       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by

3   jury for all issues so triable.

4

5   Dated: May 5, 2010

6                                           Francis O. Scarpulla (41059)
                                            Craig C. Corbitt (83251)
7                                           Christopher T. Micheletti (136446)
                                            Judith A. Zahid (215418)
                                            Patrick B. Clayton (240191)
8                                           Qianwei Fu (242669)
                                            ZELLE HOFMANN VOELBEL & MASON LLP
9                                           44 Montgomery Street, Suite 3400
                                            San Francisco, CA 94104
10                                          Telephone:    (415) 693-0700
                                            Facsimile:    (415) 693-0770
11                                          *fscarpulla@zelle.com*

12                                          Christopher Lovell (NY Bar No. CL-2595)
                                            Craig M. Essenmacher (MI Bar No. P56985)
13                                          Keith Essenmacher (MI Bar No. P60945)
                                            Fred T. Isquith Jr. (NY Bar No. FI-1064)
14                                          LOVELL STEWART HALEBIAN LLP
                                            61 Broadway, Suite 501
15                                          New York, New York 10006
                                            Telephone:    (212) 608-1900
16                                          Facsimile:    (212) 719-4775
                                            *clovell@lshllp.com*

17
                                            Michael L. Belancio  (KS Bar No. 19395)
18                                          Foland, Wickens, Eisfelder, Roper & Hofer, P.C.
                                            911 Main Street, 30th Floor
19                                          Kansas City, Missouri 64105
                                            Telephone:    (816) 472-7474
20                                          Facsimile:    (816) 472-6262
                                            *mbelancio@fwpclaw.com*

21
                                            *Attorneys for Plaintiffs and the Proposed Classes*
22

23

24

25   #3221111v2

26

27

28

---

32

CLASS ACTION COMPLAINT